Abbas Kazerounian, Esq.
California Bar No.: 249203
**KAZEROUNI LAW GROUP, APC**
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Phone: (800) 400-6808
FAX: (800) 520-5523
ak@kazlg.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| Kelly Benson, Naomi Blocker, Debra Boden, William Boden, Nathaniel Depano, Yaroslav Kut, Adriane Miles, Dawn Mighaccio, John Reyes, and Sean Woodburn, on behalf of themselves,<br><br>                    Plaintiffs,<br><br>v.<br><br>Credit One Financial d/b/a Credit One Bank,<br><br>                    Defendant. | Case No.:   '16CV2095 LAB NLS<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL. CIV. CODE §§ 1788-1788.32**<br>2. **NEGLIGENT VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 ET SEQ.**<br>3. **INTENTIONAL VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227 ET SEQ.**<br>4. **NEGLIGENCE**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.   The California legislature has determined that the banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts and that unfair or deceptive collection practices undermine the public confidence that is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. The Legislature has further determined that there is a need to ensure that debt collectors exercise this responsibility with fairness, honesty and due regard for the debtor's rights and that debt collectors must be prohibited from engaging in unfair or deceptive acts or practices.

2.   The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 et seq. was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3.   In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11.

4.   Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.
>
> *Id*. at § 12; see also *Martin v. Leading Edge Recovery Solutions,*

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

*LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

5. Congress also specifically found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the time of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

6. Plaintiffs, by Plaintiffs' attorneys, bring this action to challenge the conduct of CREDIT ONE FINANCIAL doing business as CREDIT ONE BANK ("Credit One" or "Defendant"), with regard to attempts by defendant to unlawfully and abusively collect a debt allegedly owed by Plaintiffs. Further, Plaintiffs bring this action for damages and any other available legal or equitable remedies resulting from the actions of Defendant in its negligent and/or willful violations of the TCPA and RFDCPA.

7. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

8. The statute of limitations is tolled due to the commencement of a class action based on same or similar allegations filed against Defendant on December 17, 2014 in the Northern District of Illinois. *America Pipe & Construction Co v. State of Utah*, 414 U.S. 538.

9. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to Plaintiffs, or to Plaintiffs' counsel, which Plaintiffs alleges on personal knowledge.

10. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

11. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

//

//

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

**JURISDICTION AND VENUE**

12. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692(k), and 28 U.S.C. § 1367 for supplemental state claims.

13. This Court has federal question jurisdiction because this action arises out of Defendant's violations of federal law. 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740 (2012).

14. Because Defendant conducts business within the State of California, personal jurisdiction is established.

15. Venue is proper in the United States District Court for the Southern District District of California pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within this judicial district and at least one of the plaintiffs is located within this district.

**PARTIES**

16. Plaintiff Kelly Benson is, and at all times mentioned herein was, a resident of the City of Eureka, County of Humboldt, State of California.

17. Plaintiff Naomi Blocker is, and at all times mentioned herein was, a resident of the City of San Diego, County of San Diego, State of California.

18. Plaintiff Debra Boden is, and at all times mentioned herein was, a resident of the City of San Bernardino, County of San Bernardino, State of California.

19. Plaintiff William Boden is, and at all times mentioned herein was, a resident of the City of San Bernardino, County of San Bernardino, State of California.

20. Plaintiff Nathaniel Depano is, and at all times mentioned herein was, a resident of the City of Murrieta, County of Riverside, State of California.

21. Plaintiff Yaroslav Kut is, and at all times mentioned herein was, a resident of the City of North Highlands, County of Sacramento, State of California.

22. Plaintiff Dawn Mighaccio is, and at all times mentioned herein was, a resident of the City of Taft, County of Kern, State of California.

23. Plaintiff Adriane Miles is, and at all times mentioned herein was, a resident of the City of Sacramento, County of Sacramento, State of California.

24. Plaintiff John Reyes is, and at all times mentioned herein was, a resident of the City of Redlands, County of San Bernardino, State of California.

25. Plaintiff Sean Woodburn is, and at all times mentioned herein was, a resident of the City of Eureka, County of Humboldt, State of California.

26. Plaintiffs are each, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153 (39).

27. Defendant Credit One is located in the City of Las Vegas, in the State of Nevada.

28. Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153 (39).

29. At all times relevant, Defendant conducted business in the State of California and within this judicial district.

30. Any violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such specific violation.

31. Plaintiff, each of them, are a natural persons from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiffs, and are each a "debtor" as that term is defined by California Civil Code § 1788.2(h).

32. Defendant, in the ordinary course of business, regularly, on behalf of themselves, or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), are therefore debt collectors as that term is defined by California Civil Code § 1788.2(c).

33. This case involves money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer

1   credit transaction.   As such, this action arises out of a consumer debt and

2   "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

3                                    FACTUAL ALLEGATIONS

4

5                                    PLAINTIFF KELLY BENSON

6   34.   Between September 20, 2013 and October 25, 2015, Defendant called

7         Plaintiff Kelly Benson on Plaintiff Kelly Benson's cellular telephone number

8         ending in 7700 via an "automatic telephone dialing system" ("ATDS"), as

9         defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as

10        prohibited by 47 U.S.C. § 227(b)(1)(A).

11  35.   This ATDS has the capacity to store or produce telephone numbers to be

12        called, using a random or sequential number generator.

13  36.   In total, Plaintiff Kelly Benson has received at least 2,224 calls from

14        Defendant on Plaintiff's cellular telephone.

15  37.   For example, during ten days in April 2014, Plaintiff received a total of 105

16        phone calls from Defendant, specifically —

17             •   on April 17, 2014, Plaintiff received 12 phone calls

18             •   on April 18, 2014, Plaintiff received 12 phone calls

19             •   on April 19, 2014, Plaintiff received 12 phone calls

20             •   on April 21, 2014, Plaintiff received 9 phone calls

21             •   on April 22, 2014, Plaintiff received 12 phone calls

22             •   on April 23, 2014, Plaintiff received 12 phone calls

23             •   on April 24, 2014, Plaintiff received 12 phone calls

24             •   on April 25, 2014, Plaintiff received 12 phone calls

25             •   on April 26, 2014, Plaintiff received 12 phone calls

26  38.   Plaintiff Kelly Benson clearly revoked any type of prior express consent, if

27        prior express consent ever existed, by stating that Plaintiff Kelly Benson no

28        longer wished to be contacted by phone.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

39. Plaintiff Kelly Benson answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

40. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Kelly Benson.

41. The calls by Defendant to Plaintiff Kelly Benson's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF NAOMI BLOCKER**

42. Between February 14, 2011 and November 30, 2015, Defendant called Plaintiff Naomi Blocker on Plaintiff Naomi Blocker's cellular telephone number ending in 73 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

43. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

44. In total, Plaintiff Naomi Blocker has received at least 2,043 calls from Defendant on Plaintiff's cellular telephone.

45. For example, during one week in November 2015, Plaintiff received a total of 53 phone calls from Defendant, specifically —

- on November 5, 2015, Plaintiff received 7 phone calls
- on November 6, 2015, Plaintiff received 10 phone calls
- on November 7, 2015, Plaintiff received 9 phone calls
- on November 8, 2015, Plaintiff received 9 phone calls
- on November 9, 2015, Plaintiff received 8 phone calls

- on November 10, 2015, Plaintiff received 5 phone calls
- on November 11, 2015, Plaintiff received 5 phone calls

46. Plaintiff Naomi Blocker clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Naomi Blocker no longer wished to be contacted by phone.

47. Plaintiff Naomi Blocker answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

48. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Naomi Blocker.

49. The calls by Defendant to Plaintiff Naomi Blocker's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF DEBRA BODEN**

50. Between January 21, 2015 and November 12, 2015, Defendant called Plaintiff Debra Boden on Plaintiff Debra Boden's cellular telephone number ending in 7866 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

51. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

52. In total, Plaintiff Debra Boden has received at least 2,248 calls from Defendant on Plaintiff's cellular telephone.

53. For example, during eleven days in September 2015, Plaintiff received a total of 88 phone calls from Defendant, specifically —

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

- on September 14, 2015, Plaintiff received 8 phone calls
- on September 15, 2015, Plaintiff received 9 phone calls
- on September 16, 2015, Plaintiff received 10 phone calls
- on September 17, 2015, Plaintiff received 7 phone calls
- on September 18, 2015, Plaintiff received 6 phone calls
- on September 19, 2015, Plaintiff received 7 phone calls
- on September 20, 2015, Plaintiff received 3 phone calls
- on September 21, 2015, Plaintiff received 10 phone calls
- on September 22, 2015, Plaintiff received 10 phone calls
- on September 23, 2015, Plaintiff received 9 phone calls
- on September 24, 2015, Plaintiff received 9 phone calls

54. Plaintiff Debra Boden clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Debra Boden no longer wished to be contacted by phone.

55. Plaintiff Debra Boden answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

56. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Debra Boden.

57. The calls by Defendant to Plaintiff Debra Boden's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF WILLIAM BODEN**

58. Between January 31, 2015 and August 28, 2015, Defendant called Plaintiff William Boden on Plaintiff William Boden's cellular telephone number

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

ending in 9314 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

59.   This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

60.   In total, Plaintiff William Boden has received at least 843 calls from Defendant on Plaintiff's cellular telephone.

61.   For example, during two weeks in January 2015, Plaintiff received a total of 110 phone calls from Defendant, specifically —

   •   on January 2, 2015, Plaintiff received 7 phone calls
   •   on January 3, 2015, Plaintiff received 8 phone calls
   •   on January 4 2015, Plaintiff received 7 phone calls
   •   on January 5, 2015, Plaintiff received 7 phone calls
   •   on January 6, 2015, Plaintiff received 6 phone calls
   •   on January 7, 2015, Plaintiff received 7 phone calls
   •   on January 8, 2015, Plaintiff received 8 phone calls
   •   on January 9, 2015, Plaintiff received 6 phone calls
   •   on January 10, 2015, Plaintiff received 6 phone calls
   •   on January 11, 2015, Plaintiff received 7 phone calls
   •   on January 12, 2015, Plaintiff received 9 phone calls
   •   on January 13, 2015, Plaintiff received 7 phone calls
   •   on January 14, 2015, Plaintiff received 8 phone calls
   •   on January 15, 2015, Plaintiff received 8 phone calls
   •   on January 16, 2015, Plaintiff received 9 phone calls

62.   Plaintiff William Boden clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff William Boden no longer wished to be contacted by phone.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

63.   Plaintiff William Boden answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

64.   Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff William Boden.

65.   The calls by Defendant to Plaintiff William Boden's cell phone continued, even after Plaintiff's oral revocation.

### PLAINTIFF NATHANIEL DEPANO

66.   Between April 7, 2015 and September 25, 2015, Defendant called Plaintiff Nathaniel Depano on Plaintiff Nathaniel Depano's cellular telephone number ending in 3940 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

67.   This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

68.   In total, Plaintiff Nathaniel Depano has received at least 1,346 calls from Defendant on Plaintiff's cellular telephone.

69.   For example, during two weeks in May and June of 2015, Plaintiff received a total of 177 phone calls from Defendant, specifically —

- on May 20, 2015, Plaintiff received 14 phone calls
- on May 21, 2015, Plaintiff received 14 phone calls
- on May 22, 2015, Plaintiff received 12 phone calls
- on May 23, 2015, Plaintiff received 14 phone calls
- on May 24, 2015, Plaintiff received 11 phone calls

- on May 25, 2015, Plaintiff received 13 phone calls
- on May 26, 2015, Plaintiff received 14 phone calls
- on May 27, 2015, Plaintiff received 12 phone calls
- on May 28, 2015, Plaintiff received 12 phone calls
- on May 29, 2015, Plaintiff received 12 phone calls
- on May 30, 2015, Plaintiff received 12 phone calls
- on May 31, 2015, Plaintiff received 11 phone calls
- on June 1, 2015, Plaintiff received 13 phone calls
- on June 2, 2015, Plaintiff received 13 phone calls

70. Plaintiff Nathaniel Depano clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Nathaniel Depano no longer wished to be contacted by phone.

71. Plaintiff Nathaniel Depano answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

72. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Nathaniel Depano.

73. The calls by Defendant to Plaintiff Nathaniel Depano's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF YAROSLAV KUT**

74. Between September 4, 2014 and November 30, 2015, Defendant called Plaintiff Yaroslav Kut on Plaintiff Yaroslav Kut's cellular telephone number ending in 5887 via an "automatic telephone dialing system" ("ATDS"), as

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

75. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

76. In total, Plaintiff Yaroslav Kut has received at least 1,987 calls from Defendant on Plaintiff's cellular telephone.

77. For example, during two weeks in November 2015, Plaintiff received a total of 131 phone calls from Defendant, specifically —

- on November 1, 2015, Plaintiff received 9 phone calls
- on November 2, 2015, Plaintiff received 10 phone calls
- on November 3, 2015, Plaintiff received 10 phone calls
- on November 4, 2015, Plaintiff received 10 phone calls
- on November 5, 2015, Plaintiff received 10 phone calls
- on November 6, 2015, Plaintiff received 10 phone calls
- on November 7, 2015, Plaintiff received 10 phone calls
- on November 8, 2015, Plaintiff received 10 phone calls
- on November 9, 2015, Plaintiff received 10 phone calls
- on November 10, 2015, Plaintiff received 10 phone calls
- on November 11, 2015, Plaintiff received 10 phone calls
- on November 12, 2015, Plaintiff received 10 phone calls
- on November 13, 2015, Plaintiff received 10 phone calls
- on November 14, 2015, Plaintiff received 2 phone calls

78. Plaintiff Yaroslav Kut clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Yaroslav Kut no longer wished to be contacted by phone.

79. Plaintiff Yaroslav Kut answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

80. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Yaroslav Kut.

81. The calls by Defendant to Plaintiff Yaroslav Kut's cell phone continued, even after Plaintiff's oral revocation.

### PLAINTIFF DAWN MIGHACCIO

82. Between February 18, 2015 and October 30, 2015, Defendant called Plaintiff Dawn Mighaccio on Plaintiff Dawn Mighaccio's cellular telephone number ending in 9872 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

83. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

84. In total, Plaintiff Dawn Mighaccio has received at least 2,894 calls from Defendant on Plaintiff's cellular telephone.

85. For example, during one week in February 2015, Plaintiff received 103 calls from Defendant, specifically —

  • on February 4, 2015, Plaintiff received 9 phone calls
  • on February 5, 2015, Plaintiff received 10 phone calls
  • on February 6, 2015, Plaintiff received 18 phone calls
  • on February 7, 2015, Plaintiff received 18 phone calls
  • on February 8, 2015, Plaintiff received 16 phone calls
  • on February 9, 2015, Plaintiff received 17 phone calls
  • on February 10, 2015, Plaintiff received 15 phone calls

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

86. Plaintiff Dawn Mighaccio clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Dawn Mighaccio no longer wished to be contacted by phone.

87. Plaintiff Dawn Mighaccio answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

88. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Dawn Mighaccio.

89. The calls by Defendant to Plaintiff Dawn Mighaccio's cell phone continued, even after Plaintiff's oral revocation.

### PLAINTIFF ADRIANE MILES

90. Between September 4, 2013 and November 13, 2015, Defendant called Plaintiff Adriane Miles on Plaintiff Adrian Miles's cellular telephone number ending in 2624 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

91. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

92. In total, Plaintiff Adriane Miles has received at least 2,109 calls from Defendant on Plaintiff's cellular telephone.

93. For example, during one week in August 2014, Plaintiff received 70 calls from Defendant, specifically —

- on August 13, 2014, Plaintiff received 10 phone calls
- on August 14, 2014, Plaintiff received 10 phone calls

- on August 15, 2014, Plaintiff received 10 phone calls
- on August 16, 2014, Plaintiff received 10 phone calls
- on August 17, 2014, Plaintiff received 10 phone calls
- on August 18, 2014, Plaintiff received 10 phone calls
- on August 19, 2014, Plaintiff received 10 phone calls

94. Plaintiff Adriane Miles clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Adriane Miles no longer wished to be contacted by phone.

95. Plaintiff Adriane Miles answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

96. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Adriane Miles.

97. The calls by Defendant to Plaintiff Adriane Miles's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF JOHN REYES**

98. Between August 27, 2012 and March 2, 2015, Defendant called Plaintiff John Reyes on Plaintiff John Reyes's cellular telephone number ending in 6717 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

99. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

100. In total, Plaintiff John Reyes has received at least 2,141 calls from Defendant on Plaintiff's cellular telephone.

101. For example, during one week in March 2015, Plaintiff received a total number of 83 calls from Defendant, specifically —

   • on March 10, 2014, Plaintiff received 12 phone calls

   • on March 11, 2014, Plaintiff received 12 phone calls

   • on March 12, 2014, Plaintiff received 12 phone calls

   • on March 13, 2014, Plaintiff received 12 phone calls

   • on March 14, 2014, Plaintiff received 12 phone calls

   • on March 15, 2014, Plaintiff received 12 phone calls

   • on March 16, 2014, Plaintiff received 11 phone calls

102. Plaintiff John Reyes clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff John Reyes no longer wished to be contacted by phone.

103. Plaintiff John Reyes answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

104. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff John Reyes.

105. The calls by Defendant to Plaintiff John Reyes's cell phone continued, even after Plaintiff's oral revocation.

**PLAINTIFF SEAN WOODBURN**

106. Between February 20, 2012 and September 23, 2015, Defendant called Plaintiff Sean Woodburn on Plaintiff Sean Woodburn's cellular telephone

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

number ending in 2988 via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1), using an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

107. This ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

108. In total, Plaintiff Sean Woodburn has received at least 2,127 calls from Defendant on Plaintiff's cellular telephone.

109. For example, during ten days in October 2014, Plaintiff received a total of 90 phone calls from Defendant, specifically --

- on October 1, 2014, Plaintiff received 9 phone calls
- on October 2, 2014, Plaintiff received 7 phone calls
- on October 3, 2014, Plaintiff received 9 phone calls
- on October 4, 2014, Plaintiff received 10 phone calls
- on October 5, 2014, Plaintiff received 8 phone calls
- on October 6, 2014, Plaintiff received 8 phone calls
- on October 7, 2014, Plaintiff received 10 phone calls
- on October 8, 2014, Plaintiff received 10 phone calls
- on October 9, 2014, Plaintiff received 9 phone calls
- on October 10, 2014, Plaintiff received 10 phone calls

110. Plaintiff Sean Woodburn clearly revoked any type of prior express consent, if prior express consent ever existed, by stating that Plaintiff Sean Woodburn no longer wished to be contacted by phone.

111. Plaintiff Sean Woodburn answered several of the above mentioned autodialed telephone calls from Defendant and asked Defendant to stop calling. Despite this clear and unmistakable request, the calls continued without interruption. Each of these requests terminated any express or implied consent that Defendant may have had prior to beginning its campaign of harassment by telephone.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

112. Each of these calls was an attempt to collect on a consumer debt allegedly due and owing by Plaintiff Sean Woodburn.

113. The calls by Defendant to Plaintiff Sean Woodburn's cell phone continued, even after Plaintiff's oral revocation.

114. When Plaintiffs, each of them, answered Defendant's phone calls, there was either a high-pitched noise on the other end of the phone or silence indicating that an ATDS was in use.

115. On good information and belief, the ATDS used to make the calls has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

116. These calls were made by Defendant or Defendant's agent, with Defendant's permission, knowledge, control, and for Defendant's benefit.

117. The telephone number Defendant called was assigned to a cellular telephone service for which Plaintiffs each incur a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

118. The telephone calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

119. As a result, the telephone calls by Defendant, or its agent(s), violated 47 U.S.C. § 227(b)(1).

120. Through Defendant's actions, Plaintiffs suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

121. Through this conduct of calling Plaintiffs and causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse or harass any person at the called number, Defendant engaged in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of the debt, in violation of Cal. Civ. Code § 1788.11(d) and (e).

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

122. This communication was a "debt collection" as Cal. Civ. Code 1788.2(b) defines that phrase, and an "initial communication" consistent with Cal. Civ. Code § 1812.700(b).

123. Despite knowing its obligations under state and federal law to refrain from placing unconsented calls to consumers' cell phones, Defendant nevertheless placed more than one thousand calls to Plaintiff's cell phone in deliberate disregard of those duties and obligations.

124. Plaintiffs were each personally affected, becoming frustrated and distressed that, despite telling Defendant to stop calling Plaintiff's cell phone, Defendant continued to harass Plaintiffs with collection calls using an ATDS.

125. The unrelenting, repetitive calls disrupted Plaintiffs' daily activities and the peaceful enjoyment of Plaintiffs' personal and professional lives, including the ability to use the phone.

126. The calls placed by Defendant to Plaintiffs were extremely intrusive into Plaintiffs' personal lives, including Plaintiffs' relationships with close family members. Specifically, Plaintiffs each began to ignore or send to voicemail many incoming calls from unknown numbers, out of frustration in dealing with Defendant's unwanted and intrusive calls. In doing so, Plaintiffs missed many important communications from friends and family.

127. The number of calls made to Plaintiffs rose to the level of wanton and/or reckless disregard for the rights of Plaintiffs.

**CAUSES OF ACTION**

**COUNT I**

**ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (ROSENTHAL ACT)**

**CAL. CIV. CODE §§ 1788-1788.32**

128. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

129. The foregoing acts and omissions constitute numerous and multiple violations of the Rosenthal Act, including but not limited to each and every one of the above-cited provisions of the Rosenthal Act, Cal. Civ. Code §§ 1788-1788.32, specifically, the voluminous calls made to each Plaintiff in the time periods described.

130. As a result of each and every violation of the Rosenthal Act, Plaintiff is entitled to any actual damages pursuant to Cal. Civ. Code § 1788.30(a); statutory damages for a knowing or willful violation in the amount up to $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b); and reasonable attorney's fees and costs pursuant to Cal. Civ. Code § 1788.30(c) from Defendant.

**COUNT II**

**NEGLIGENT VIOLATIONS OF THE**

**TELEPHONE CONSUMER PROTECTION ACT (TCPA)**

**47 U.S.C. 227**

131. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

132. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

133. As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

134. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

//

//

//

//

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

## COUNT III

## KNOWING AND/OR WILLFUL OF THE

## TELEPHONE CONSUMER PROTECTION ACT (TCPA)

### 47 U.S.C. 227

135. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

136. Plaintiffs made multiple requests for Defendant to stop calling them.

137. Each call after Plaintiffs requested Defendant stop calling Plaintiff's cell phones constitutes a knowing and/or willful violation of the TCPA.

138. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

139. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227 et seq., Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

140. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

## COUNT IV

## NEGLIGENCE

141. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

142. Defendant had a duty to use care to not infringe on consumers' privacy rights when collecting on alleged debts and not calling Plaintiffs hundreds and/or thousands of times to harass and/or abuse Plaintiffs.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

143. Defendant breached that duty by calling Plaintiffs on Plaintiffs' cellular telephones a voluminous number of times, as discussed above, and continued to call despite Plaintiff's request that the calls stop.

144. Plaintiffs were harmed and suffered injury as described above.

145. The negligence of Defendant was a substantial and proximate factor in causing Plaintiff this harm and injury described above.

146. As said conduct was carried out by Defendants in an oppressive, malicious, despicable, gross and wontonly negligent manner, said conduct demonstrates Defendants' conscious disregard for the rights and safety of Plaintiff or their family. As such Plaintiff are entitled to recover punitive damages from Defendants in an amount according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

- WHEREFORE, Plaintiff prays that judgment be entered against Defendants, and Plaintiff be awarded damages from Defendants, as follows:

**COUNT I**

- An award of actual damages pursuant to California Civil Code § 1788.30(a);

- An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b);

- An award of costs of litigation and reasonable attorney's fees, pursuant to Cal. Civ. Code § 1788.30(c); and

- Any and all other relief that this Court deems just and proper;

//

//

//

### COUNT II

- As a result of Defendants' negligent violations of 47 U.S.C. § 227(b)(1)(B), Plaintiff is entitled to $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(d)(3)(A), Plaintiff is entitled to $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B);

- As a result of Defendant's negligent violations of 47 U.S.C. § 227(d)(3)(B), Plaintiff is entitled $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B); and

- Any and all other relief that this Court deems just and proper.

### COUNT III

- As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(b)(1)(B), Plaintiff is entitled to treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

- As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(d)(3)(A), Plaintiff is entitled to treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C);

- As a result of Defendants' willful and/or knowing violations of 47 U.S.C. § 227(d)(3)(B), Plaintiff is entitled to treble damages, as provided by statute, up to $1,500, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); and

- Any and all other relief that the Court deems just and proper.

### COUNT IV

- Special, general, compensatory, and punitive damages.

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626

1    •    Reasonable costs; and

2    •    Any and all other relief that this Court deems just and proper.

3                                    **JURY DEMAND**

4    147.  Pursuant to the seventh amendment to the Constitution of the United States of

5          America, Plaintiff is entitled to, and demands, a trial by jury.

6

7          Dated this 18th day of August 2016.

8                                         Respectfully submitted,

9

10                                        KAZEROUNI LAW GROUP, APC

11

12                                   By:      /s/ Abbas Kazerounian
                                             Abbas Kazerounian, Esq.
13                                           245 Fischer Avenue, Unit D1
                                             Costa Mesa, CA 92626
14                                           *Attorneys for Plaintiffs*
15

16

17   Joshua B. Swigart, Esq. (SBN: 225557)
     josh@westcoastlitigation.com
18   Veronica E. McKnight, Esq. (SBN: 306562)
     **Hyde & Swigart**
19   2221 Camino Del Rio South, Suite 101
     San Diego, CA 92108
20   Telephone: (619) 233-7770
     Facsimile: (619) 297-1022
21

22

23

24

25

26

27

28

---

KAZEROUNI LAW GROUP, APC
245 Fischer Ave.
Costa Mesa, CA 92626